IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,                  No. CR-S-03-172 GEB CKD P

    vs.

TROY E. KING,

    Defendant.              <u>FINDINGS & RECOMMENDATIONS</u>

                              /

        Before the court is defendant Troy E. King's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence," filed August 24, 2009. The government has filed an opposition, to which movant has replied. Having read and considered the parties' respective written submissions, and having reviewed the record of the proceedings, the court will recommend that King's motion be denied.

I. <u>Background</u>

        Having reviewed the record, the court adopt's the government's summary of the facts: On November 1, 2002, an FBI undercover confidential informant ("CI") made a three ounce (85 gms.) purchase of crack-cocaine from defendant King outside the W. Sixth Street house where he resided. Prior to the buy, the CI made a recorded undercover call to King to arrange the transaction and King agreed to meet the CI outside King's residence. Prior to going to the

meeting location, the CI was first searched, equipped with a wireless transmitter, and given the purchase money by the agents. The CI drove in his vehicle (a minivan) to meet King. As the surveillance agents watched, the CI parked across the street from King's house. Soon thereafter, King exited the front door of his residence, walked over to, and got into, the CI's minivan. Once outside the minivan, King gave the CI the three ounces of crack cocaine and the CI gave King $1,425.

After the exchange but while still in the CI's minivan, King proceeded to "school" the CI about the crack business, cautioning him not to spend his money on crazy things and to save his money so that if he gets arrested he has money to pay a lawyer. [The agents could hear the CI and King during the transaction, via the transmitting device worn by the CI. The audio recording of the conversation was inaudible in large part but some portions were understandable.] Shortly thereafter, a car full of state probation officers (in uniform) involved in a totally unrelated matter, happened to drive by, causing King to rush [out] of the CI's minivan and hurry back across the street to his residence.

Between November 1, 2002 and May of 2003, the CI was involved in making other undercover purchases of cocaine base in other investigations. Once those investigations were completed, a search warrant was obtained for the defendant's W. Sixth Street residence. On May 20, 2003, the search warrants were executed. At the Sixth Street residence the agents found, in the defendant's bedroom, a digital scale, two baggies containing cocaine base (23.1 gm and 8.6 gm) and a baggie containing powder cocaine (125.7 gm). In a rear bedroom the agents found two packages which they recognized to be cocaine "kilo" packaging containing cocaine residue.

Defendant King was not located when the search warrants were executed and remained a fugitive until he was found and arrested on August 4, 2003.

King was first indicted on April 9, 2003. A superseding indictment was returned on September 30, 2004, charging King with three offenses:

    1. distributing cocaine base on November 1, 2002;

     2. possessing cocaine base with intent to distribute on May 20, 2003; and

     3. possessing cocaine with intent to distribute on May 20, 2003.

  King's jury trial began on August 2, 2005 and ended on August 4, 2005 with a verdict finding him guilty on all three counts. The jury returned a special verdict finding that King had distributed more than 50 grams of cocaine base on November 1, 2002, and had possessed between 5 and 50 grams of cocaine base on May 20, 2003.

  At King's sentencing hearing on December 12, 2005, the district court found that King was a career criminal under the Sentencing Guidelines and gave him 292 month concurrent sentences on each of the three counts, a $300 special assessment, and a 120-month term of supervised release.

  Petitioner appealed to the United States Court of Appeals for the Ninth Circuit, which affirmed the judgment on January 10, 2007. (Dkt. No. 97.) Petitioner filed a petition for a writ of certiorari, which was denied by the Supreme Court on April 16, 2007. <u>United States v. King</u>, 549 U.S. 1356 (2007).

II. <u>Legal Standard for § 2255 Motion</u>

  A motion to vacate, set aside, or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2555 entitles a prisoner to relief if "the court finds ... [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and the records of the case conclusively show that the prisoner is entitled to no relief.'" <u>United States v. Blaylock</u>, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal. <u>See United States v. McMullen</u>, 98 F.3d 1155, 1159 (9th Cir.1996); <u>United States v. Burrows</u>, 872 F.2d 915, 917 (9th Cir. 1989). Mere conclusory statements or statements that are inherently incredible in a § 2255

motion are insufficient to require a hearing. See United States v. Howard, 381 F.3d 873, 877, 879 (9th Cir. 2004); United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980). While a movant is not required to allege facts in detail, he must make factual allegations. See Hearst, 638 F.2d at 1194. Accordingly, an evidentiary hearing is only required if: (1) a petitioner alleges specific facts, which, if true would entitle him to relief; and (2) the petition, files, and record of the case cannot conclusively show that the petitioner is entitled to no relief. See Howard, 381 F.3d at 877.

III. Discussion

By the instant motion, King seeks an order setting aside his conviction or, in the alternative, reducing his sentence. In the reply, he also seeks an evidentiary hearing to expand the record. King contends his trial counsel rendered ineffective assistance.

Originally, King also argued that he was entitled to re-sentencing pursuant to amendments to the United States Sentencing Guidelines applicable to crack cocaine cases. (Motion at 20-25.) The government countered that this claim was meritless, as King was sentenced as a career offender under the Sentencing Guidelines based on his criminal history, and such a sentence is not based on the crack cocaine guidelines. (Response at 4, citing United States v. Wesson, 583 F.3d 728 (9th Cir. 2009).) In his reply, defendant asserts that this claim was "incorrectly" raised in his § 2255 motion and requests that the court dismiss this claim without prejudice. (Dkt. No. 112 ("Reply") at 4-5.) Accordingly, the court considers this claim withdrawn.

Finally, while the government argues that King's motion was untimely filed under the one-year statute of limitations, the government concedes that King may be entitled to equitable tolling based on the alleged negligence of his attorney. (Response at 3-4.) As it appears that resolving this issue would require an evidentiary hearing, the court first considers defendant's claims on the merits, and will assess their timeliness if necessary.

A. Stipulation to DEA Chemist Testimony

Defendant argues that his trial counsel, Alan Baum, rendered ineffective assistance

4

by stipulating to the DEA chemist's testimony at trial and failing to independently investigate the drug evidence. He claims that Baum entered this stipulation without King's permission and that an independent investigation would have undermined the government's case. (Motion at 26-28.) Defendant argues that "the critical issue" concerning the stipulation is that Baum "should have excercise[d] and protected Defendant's Confrontation Clause rights." (Id. at 28.) Defendant also alleges that Baum's error "allowed evidence that had been tampered [with] to be admitted." (Id.)

The stipulation at issue is attached as an exhibit to the government's response. (Response at 5-7.) It documents an agreement by counsel for the government and defendant, respectively, that "if DEA Chemist JW Robinson were called to testify, he would . . . testify that he examined and tested the following exhibits in this case and came to the following conclusions:

Gov. Exh. 1 - 81.7 grams containing cocaine base

Gov. Exh. 2 - 125.7 grams of cocaine hydrochloride (88% pure)

Gov. Exh. 3 - 23.1 grams containing cocaine base

Gov. Exh. 4 - contains cocaine residue

Gov. Exh. 5(a) - contains cocaine residue hydrochloride residue

Gov. Exh. 5(b) - contains cocaine residue hydrochloride residue[.]"

(Id. at 5-6.) It was further stipulated that Robinson would testify that Government Exhibits 2 and 3 originally came "in an envelope that indicated that they were seized on May 20, 2003," and that Robinson would also testify as to chain of evidence information that would allow various Government exhibits to be admitted at trial, in light of other authenticating evidence. (Id. at 6.)

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or

omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93 (2000).

Here, defendant has failed to establish either prong of the Strickland test. First, the fact that Baum did not seek defendant's permission before stipulating to the DEA chemist's testimony does not, in itself, constitute deficient performance. See United States v. Guerra de Aguilera, 600 F.2d 752, 753 (9th Cir. 1979) ("Litigants are generally bound by the conduct of their attorneys, absent egregious circumstances.")

Second, it appears that Baum simply made a tactical decision to stipulate to the DEA chemist's testimony rather than have the same testimony presented live. The defense theory as to Count 1 concerned the CI's financial motives and the conduct of law enforcement. The defense theory as to Counts 2 and 3 was that the drugs found in a bedroom of defendant's house did not belong to defendant. No defense theory turned on whether cocaine and cocaine base were actually found in the amounts listed by the DEA chemist. Thus it was a reasonable trial strategy for defense counsel to stipulate to this information rather than drawing greater attention to it by having it elicited in live testimony. Post-hoc complaints about the strategy or tactics employed by defense counsel are typically found insufficient to satisfy the first prong of Strickland. 466 U.S. at 690; see also People of Territory of Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim

of ineffective assistance of counsel."); United States v. Simmons, 923 F.2d 934, 956 (2d Cir.1991) (appellant's displeasure with strategy employed by trial counsel insufficient to establish ineffectiveness).

Nor has defendant shown that he was prejudiced by this stipulation. His assertion that an independent forensic chemist's analysis of the drugs would have showed "tampering by the Government" or otherwise bolstered his defense, is merely speculative. See Lemon v. United States, 335 F.3d 1095, 1096 (8th Cir. 2003) (defense counsel's decision to stipulate that controlled substance found in apartment with defendant was crack cocaine was not ineffective assistance; counsel's decision was part of reasonable trial strategy in which counsel sought to disprove element of possession rather than drug type, and stipulation did not prejudice defendant). Thus this claim should be denied.

B. Failure to Investigate Fingerprint Evidence

Defedant next claims that his counsel was ineffective because he failed to investigate "key evidence of fingerprints and consult with [an] expert witness, who could have identified the fingerprints." (Motion at 30.) These unidentified latent prints were found on evidence seized during the May 20, 2003 search of defendant's house, specifically on two empty packages of the type commonly used to package single kilograms of cocaine. (See Dkt. No. 107 at 3-4 (DEA Fingerprint Reports of Nov. 12, 2003 and November 17, 2003).) According to the stipulation concerning the DEA chemist's testimony, those two packages (Government Exhibits 5(a) and 5(b)) contained residue of cocaine hydrochloride. FBI Special Agent Rodrigo Riveras testified at trial that these kilo wrappers were found in the "third" bedroom of the house. The DEA Fingerprint Report of November 17, 2003 states that "[n]o latent prints matched any of the submitted fingerprints[,]" including King's, and it was never established to whom the unidentified fingerprints belonged.

In contrast, the drugs defendant was charged with possessing in May 2003 were found in the "second" bedroom of the house, where the government claimed defendant resided.

7

The defense countered that the evidence did not conclusively prove this was defendant's room.

In the instant motion, defendant argues that, if trial counsel Baum had determined through investigation whose fingerprints were on the kilo wrappers, this "would have [led] to the owner of the various drugs and kilo wrappers." (Motion at 30.) He asserts that this investigation would have shown "that other individuals had access to the home, and the bedroom specifically, that some one else had possession of the drugs" – in other words, "possession of the entire evidence." (Id. at 31.) Defendant's argument seems to be that if his trial counsel had produced evidence that Person X had handled the kilo wrappers in the third bedroom, this would have shown that Person X, and not defendant, also possessed the drugs in the second bedroom.

This argument is unavailing. As the DEA fingerprint specialist could not determine whose fingerprints were on the kilo wrappers, and since this question did not directly bear on whether defendant possessed the drugs found in another room of the house, defense counsel made a reasonable tactical decision not to investigate this issue further. Moreover, defendant cannot show prejudice; as before, his assertion that an investigation into this evidence would have helped his case is purely speculative. Thus the court will recommend that this claim be denied as well.

Because the court finds plaintiff's claims to lack merit in any event, it need not reach the issue of whether these claims are timely.

////
////
////
////
////
////
////
////

Accordingly, IT IS HEREBY RECOMMENDED that defendant's August 24, 2009 Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Dkt. No. 100) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 13, 2012

/s/ Carolyn K. Delaney
_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
king0172.2255